Shauck, J.
The different views taken of the meaning of this instrument by counsel and by the courts below find ample explanation in the vagueness of its stipulations. That its terms are effective to convey a present interest in the coal beneath the soil, as maintained by counsel for the defendants, may be admitted; but that proposition does not seem to aid in the present inquiry, since the parties here are not contending concerning the ownership of the soil or of the coal beneath it. When the controversy arose the defendants had become the unquestionable owners of the coal. The controversy concerns the amount they were to pay for the rights and privileges conferred *556 upon them by the instrument, whether the title to the coal remained in the plaintiffs until its actual separation from the soil, or passed upon the execution of the instrument.
An analysis of the instrument shows that the parties first designated the rights of the defendants to be to enter upon the land described, to drill and explore for coal, and if found, to mine and remove all that might be found upon or within it. The stipulation immediately following shows that the value of the coal in place was agreed to be fifteen cents per ton, and this included compensation for the right to enter upon the land and explore for coal and to occupy such portion of the surface, not exceeding two acres, as might be absolutely necessary for mining operations. In connection with this, and contemplating the diligence with which coal should be mined “after it should be reached” the defendants bound themselves to mine to such an extent that the plaintiff should receive, at the designated “price per ton,” at least one thousand dollars per annum. The remaining stipulation of a material character does not concern the price of the coal. In making it the parties seem to have contemplated only the delay which might intervene prior to the commencement of the actual mining of coal, and with respect to that delay the defendants became bound to pay the sum of $300 per annum “as rent for coal.”
Certainly we are concerned only with the intention of the parties, and conclusive effect should not be given to the different terms “price” and “rent” if they appeared to have been used as synonj'rns. That, however, does not appear. That they were used discriminatingly to indicate *557 the different purposes for which the contemplated payments should be made, is to be inferred from the concluding portion of the stipulation lastly quoted: “When and from that time (that is, from the time the coal should be reached so as to be mined) he shall be bound as above stated.” This stipulation, and the different terms used to designate the purposes contemplated in the different payments to be made, indicate that the price of $300 per annum was to be paid so long as the defendants might retain the contract for the right to postpone mining operations; and it seems to be entirely independent of the price to be paid for the coal after mining operations should be actually undertaken.
It is said by counsel for the defendants that nearly all the instruments executed for the purposes which these parties had in view contain the express stipulation that all sums paid in advance of -mining operations shall be credited upon the agreed price of the coal when mined. The omission of such stipulation in the instrument under consideration would indicate that a different result was intended by the parties in this case. A stipulation of so material a character should not be supplied by construction. The interpretation of the contract which the trial judge gave to the jury is in accord with this view.
Judgment of the circuit cou/rt reversed, that of the common pleas affi/rmed.